IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STACEY BROWN, CV. 05-1393-HU

Petitioner, FINDINGS AND RECOMMENDATION

v.

JEAN HILL, Superintendent, Snake River Correctional Institution,

Respondent.

Kendra M. Matthews
RANSON BLACKMAN LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, Oregon 97204

Attorney for Petitioner

HARDY MYERS
Attorney General
LESTER R. HUNTSINGER
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

Attorneys for Respondent

HUBEL, Magistrate Judge

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28

U.S.C. § 2254. For the reasons set forth below, petitioner's amended habeas corpus petition should be denied.

**BACKGROUND**

On the morning of September 1, 1999, Jeffrey Saunders, the two-year-old son of petitioner's girlfriend, was found dead in his bed. On September 9, 1999, the Coos County medical examiner, Dr. William D. Hosack, conducted an autopsy and concluded that Jeffrey's death was caused by a waded up cigarette cellophane wrapper lodged in Jeffrey's trachea. Jeffrey's death was ruled accidental. Further investigation, however, lead to the indictment of petitioner, on December 22, 1999, on charges of aggravated murder, murder, and murder by abuse.

Kenneth C. Hadley and Gregory J. Hazarabedian were appointed to represent petitioner. On April 20, 2000, petitioner entered a guilty plea to the charge of murder by abuse. Petitioner admitted to stuffing a cellophane wrapper down Jeffrey's throat - not knowing whether the child was alive or dead. In exchange for his guilty plea, the state dismissed the remaining two charges, did not seek to revoke petitioner's probation, and did not seek a dangerous offender designation. Petitioner was sentenced to life imprisonment, with a 25-year mandatory minimum.

Petitioner filed a direct appeal which subsequently was dismissed for lack of prosecution. Petitioner sought state post-conviction relief on the ground that he received ineffective

assistance of counsel. The post-conviction court denied relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Brown v. Schiedler, 196 Or. App. 639, 103 P.3d 1212 (2004), rev. denied, 338 Or. 488 (2005).

In the instant proceeding, petitioner contends that his trial counsel rendered ineffective assistance by intentionally concealing, when presenting a plea agreement to petitioner, that Dr. William Brady had opined that the victim's death was caused by drowning rather than asphyxiation.

## DISCUSSION

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1987).

Where a petitioner has pled guilty upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). The prejudice prong, in turn, requires the petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to

trial. Id. at 59; Lambert v. Blodgett, 393 F.3d 943, 980 (9th Cir. 2004), cert. denied, 126 S.Ct. 484 (2005).

**I. The State Post-Conviction Record.**

The following documentary and testimonial evidence was offered by the State of Oregon at the post-conviction proceeding. According to a police narrative, on the morning Jeffrey's body was found, petitioner stated that he and Jeffrey had watched a video together the previous evening, Jeffrey went to bed around 8:25 to 8:30 p.m., petitioner heard Jeffrey moving around his room at about 10:00 p.m., Jeffrey went back to bed, and nothing else happened throughout the night.

On December 15, 1999, petitioner submitted to a polygraph examination, the results of which indicated petitioner was being deceptive. On December 17, 1999, petitioner was interviewed by Detectives Lichte and Edsall. Petitioner was advised of his Miranda rights and signed a waiver. According to Detective Lichte's report, petitioner was told that water was seen in the bathtub of the victim's residence on the morning of his death. Lichte reports that petitioner "immediately asked if [Jeffrey] had water in his lungs", and stated that he had forgotten that he had given Jeffrey a bath at about 6:30 or 7:00 p.m., the night of his death. Resp. Exh. 115.

Petitioner subsequently provided a tape-recorded statement, after being advised of his Miranda rights, indicating that he

placed Jeffrey into the bathtub after Jeffrey's mother had went to bed; he went to the kitchen to do the dishes; he heard Jeffrey fall and then heard a gasp or "gurgly" type noise; and he returned to the bathroom to find Jeffrey fully submerged in the water. Petitioner states that he tried unsuccessfully to resuscitate Jeffrey. He subsequently dried Jeffrey off, put a diaper on him, placed him on his bed (at which time he was making some wheezing noises), and left the house to smoke five cigarettes. When he returned to the bedroom, Jeffrey was dead. Petitioner stuck a cigarette cellophane wrapper down Jeffrey's throat to make it look like he choked to death. Petitioner conceded that he may have stuck his finger in Jeffrey's anus when he was drying him off because he was in a "panic".

Jeffrey's mother, Patricia Saunders, made several statements to police and took a polygraph test indicating her truthfulness. According to police reports, Ms. Saunders stated that petitioner was jealous of the time she spent with Jeffrey; that he had been angry with her because she had "cheated" with her ex-husband on August 2, 1999 (petitioner's birthday); and that petitioner never did dishes. When shown a photograph taken by police of her kitchen on September 1, 1999, Ms. Saunders stated that no dishes were done after the time she went to bed.

On March 28, 2000, Randy Loucks, an inmate at the Coos County Jail,[1] advised the Coos County Sheriff's Department that petitioner had admitted to drowning Jeffrey and then stuffing a cigarette cellophane wrapper down his throat to make it look like an accident. Loucks stated that petitioner indicated that he was upset with Patricia at the time of the murder, that he was high, and that the child had been crying and he couldn't stand it any more. Loucks stated that he overheard petitioner make similar statements to other inmates, and that he (Loucks) waited to contact authorities until after he was sentenced because he did not want anything for this information.

The deposition testimony of Dr. William Brady and the affidavit of Dr. Hosack were offered to the state court regarding the cause of Jeffrey's death. Dr. Brady opined, based upon his review of the autopsy results, the death certificate, and photographs, that Jeffrey's death was caused by drowning rather than asphyxiation. Dr. Brady acknowledged, however, that the bruising on Jeffrey's body could have resulted from force being applied to hold the child underwater, and that the cellophane wrapper could have aided in Jeffrey's death. Resp. Exh. 127. Petitioner testified in his deposition that he would not have pled had he been advised of Dr. Brady's opinion "[b]ecause it was part

[1] Loucks was serving a 110-day jail sentence for a parole violation and a positive urinalysis.

of [his] story" that he had found Jeffrey drowned in the bathtub. Resp. Exh. 126 at 9.

Dr. Hosack, the medical examiner who conducted the autopsy, reviewed Dr. Brady's deposition testimony and agreed that Jeffrey had considerable fluid in his lungs. However, Dr. Hosack attested "without reservation that Jeffrey was still alive and gasping for breath when the crumpled cellophane cigarette wrapper was aspirated and tightly lodged in the glottis (upper opening of the trachea), and this was in fact, the terminal event."

In addition to the documentary evidence presented to the post-conviction court, petitioner's trial counsel, Timothy Hadley, testified. Hadley testified that petitioner's plea "was a tough, tough decision and we had to talk long and hard about it." Hadley testified that petitioner "was very emotional and I think it was very hard for him to admit in court that he had taken the life of this child." Hadley explained why he did not convey Dr. Brady's opinion to petitioner when recommending that he enter a guilty plea:

> I had talked to [co-counsel] and we felt, probably, it didn't help us in any way but, still, we were going down to Coos County . . . and discuss[] that.
>
> Mr. Brown had a habit of making a mountain out of a molehill and I was afraid he would but we were going to discuss that with him and tell him it didn't seem to make much difference. We couldn't see where it was going to help him much.

> But, at that time, when we got to Coos County, the District Attorney gave me a statement of [Randy Loucks].
>
> * * *
>
> With [the] jailhouse confession [of Randy Loucks], Dr. Brady's opinion just seemed like it was inconsequential. It wouldn't have helped in any way for us to go in there and beat on the table and tell the jury, Hey, he died from drowning and the State's pathologist is wrong, and then the cellmate come in and say that's exactly what Mr. Brown said he did, I think we would have gotten nowhere except to have convicted Mr. Brown.

Resp. Exh. 135 at 13-15.

**II. <u>Analysis</u>.**

Based upon the foregoing, the state post-conviction court held that "petitioner was not denied the right to counsel, as guaranteed by . . . the US Constitution . . . "and failed to prove that any prejudice resulted from any perceived denial." Resp. Exh. 136 at 4. In support of its decision, the court made the following findings of fact:

> The statements and evidence against the petitioner are overwhelming that he took an action that resulted in the death of the child.
>
> The overwhelming evidence indicates that while the child probably started to drown while being held under water, he was still alive when petitioner put the wrapper into the child's mouth.
>
> Dr. Brady's testimony, if given at trial, would generally support petitioner's own statements, but would not show that the child was dead at the time petitioner put the wrapper in the child's mouth. And from his paper review of the case, Dr. Brady does not have a substantial foundation to refute the determination of the State's examiner as to the cause of death, especially where the

> death was so very much linked from the process of initial drowning, to final death by the wrapper and asphyxiation.
>
> * * * I find that the testimony by Dr. Brady as a defense would be frivolous, especially in light of the overwhelming evidence against petitioner, and would have otherwise merely supported the petitioner's own confession and related statements.
>
> Under these facts it would not be remotely reasonable for petitioner to have gone to trial and faced the ultimate punishment.
>
> Given the evidence which would have been presented had petitioner proceeded to trial and sentencing phase, there is a likelihood that petitioner would have received the Death Penalty had he proceeded to trial.

Resp. Exh. 137 at 6-8.

Petitioner has failed to rebut, with clear and convincing evidence, the state court's factual findings that the evidence against petitioner was overwhelming; that Dr. Brady's testimony did not provide a substantial foundation to refute the medical examiner's opinion as to the cause of death; that it would not have been remotely reasonable for petitioner to have gone to trial; and that there is a likelihood that, had petitioner proceeded to trial, he would have been sentenced to death. Accordingly, those findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Lambert, 393 F.3d at 977-78 (presumption of correctness applies to state court findings of fact made in the course of resolving claims of ineffective assistance of counsel).

Petitioner argues that he nonetheless has established both deficient representation and resulting prejudice under Strickland

and Hill. With regard to the prejudice prong, petitioner argues that "[l]eaving aside the predictions about the outcome of the trial, all of the evidence supports petitioner's contention that he would have exercised his right to have that trial." Pet.'s Memo. at 15. Petitioner contends that the state court's weighing of the evidence, in addressing the prejudice prong, was contrary to, or an unreasonable application of, Strickland and Hill. Pet.'s Memo. at 22.

As noted above, the Supreme Court has applied Strickland's two-prong analysis to the guilty plea context. Hill, 474 U.S. at 57-58. In so doing, the Court noted that the prejudice inquiry in many cases "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Id. at 59. The Court explained:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial*. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, *the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.*

Id. at 59 (emphasis added).

In sum, the Supreme Court has held, albeit under different factual circumstances, that the strength of the prosecution's case is an indicator of whether the defendant would have accepted a guilty plea offer even if counsel's advice had not been constitutionally deficient. In Miller v. Champion, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001), cert. denied, 534 U.S. 1140 (2002), the Tenth Circuit elaborated, holding that while a petitioner need not prove he would have prevailed at trial in order to establish prejudice under Hill, the strength of the prosecution's case should be considered as circumstantial evidence of whether the petitioner really would have gone to trial had he received adequate advice from counsel. See also Ostrander v. Green, 46 F.3d 347, 356 (4th Cir. 1995), rev'd on other grds., O'Dell v. Netherland, 95 f.3d 1214 (4th Cir. 1996) ("potential strength of the state's case must inform [Hill] analysis, inasmuch as a reasonable defendant would surely take it into account"); Lambert, 393 F.3d at 982 & 984 (where alleged deficiency was counsel's failure to investigate a potential defense, prejudice analysis is "objective" and "slim potential for success renders highly doubtful any conclusion that [petitioner] suffered prejudice).[2]

[2] Circuit case law may be persuasive authority for purposes of determining whether a state court decision is an unreasonable application of clearly established federal law. Lambert, 393 F.3d at 974.

In light of the foregoing case law, and in the absence of any cases cited by petitioner to the contrary, I conclude that the state court's consideration of the weight of the evidence against petitioner, when determining whether there is a reasonable probability that, but for counsel's alleged deficient performance, petitioner would have insisted on going to trial, is neither contrary to, nor an unreasonable application of, clearly established Federal Law.

Further, I conclude that the state court's conclusion that, in light of the "frivolous" nature of a defense premised upon Dr. Brady's opinion; the weight of the evidence against petitioner; and the possibility petitioner would receive a sentence of death; petitioner failed to demonstrate actual prejudice under Hill and Strickland, is not an unreasonable application of clearly established Federal law. Although the testimony of petitioner and petitioner's counsel was of probative value, the state post-conviction court properly evaluated the testimonial evidence in light of the circumstances petitioner faced at the time of his decision to plead.

As the facts outlined above indicated, the circumstances petitioner confronted at the time he accepted the plea agreement were grim. Petitioner had made several inconsistent statements and confessions to the police. Ms. Saunders' statements to police and photographs taken at the crime scene contradicted many of

petitioner's assertions. An inmate had come forward stating that petitioner had confessed to the murder in a manner consistent with Dr. Brady's opinion. Petitioner faced a likely sentence of death.

In sum, when the import of Dr. Brady's opinion is examined in the light of the circumstances petitioner faced at the time he decided to plead guilty, it was not objectively unreasonable for the post-conviction court to conclude that petitioner had failed to establish a reasonable probability that, but for counsel's deficient representation, he would not have pled guilty. Accordingly, habeas corpus relief is not warranted.[3]

**CONCLUSION**

Based on the foregoing, petitioner's amended habeas corpus petition (#26) should be denied, and this proceeding dismissed, with prejudice.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due November 2, 2006. If no objections are filed, the Findings and Recommendations will go under advisement on that date.

---

[3] Because petitioner failed to prove prejudice, I need not address whether counsel's performance was deficient. Strickland, 466 U.S. at 697.

If objections are filed, a response to the objections is due November 16, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this _18th___ day of October, 2006.

/s/ Dennis J. Hubel

______________________________
Dennis J. Hubel
United States Magistrate Judge